UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1735
(5:21-cv-00064-TTC-JCH)

KAREN IOVINO

Plaintiff-Appellant

v.

MICHAEL STAPLETON ASSOCIATES, LTD, d/b/a MSA Security, Inc.

Defendant-Appellee

# DEFENDANT-APPELLEE'S MOTION TO DISMISS AND MOTION TO SUSPEND THE BRIEFING SCHEDULE

Appellee-Defendant Michael Stapleton Associates, Ltd. ("MSA") respectfully moves this Court to dismiss Karen Iovino's ("Appellant-Plaintiff," "Appellant," or "Iovino") appeal due to a lack of jurisdiction pursuant to Fed. R. App. P. Rule 27 and Fourth Circuit Rule 27(f)(2). MSA simultaneously moves this Court to suspend briefing on this appeal

pending the Court's ruling on MSA's motion to dismiss. *See supra* Section V.[1]

## I. INTRODUCTION

Invoking the "narrow and selective"[2] collateral order doctrine, Iovino appeals two protective orders from the District Court: (1) Magistrate Judge Hoppe's May 23, 2024 Order granting MSA's motion for protective order (the "May 23, 2024 Order") (Joint Appendix "JA" 655); and (2) District Judge Cullen's July 24, 2024 Memorandum Opinion (JA707) and Order (JA723) denying Iovino's objections to the May 23, 2024 Order and affirming the entry of the protective order (the "July 24, 2024 Order") (collectively, the "Orders").

---

[1] On September 16, 2024, counsel for MSA spoke with the Clerk (Anisha Walker) who told MSA to include the motion to suspend the briefing schedule in the same brief as the motion to dismiss, rather than filing a separate motion. *Cf.* Fourth Circuit Rule 27(f)(3). If the Court prefers that MSA file a separate motion in compliance with Fourth Circuit Rule 27(f)(3), MSA will comply.

[2] *Will v. Hallock*, 546 U.S. 345, 350 (2006) ("[W]e have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope. *And we have meant what we have said;* although the court has been asked many times to expand the small class of collaterally appealable orders, we have instead kept it *narrow and selective* in its membership.") (emphasis added).

Iovino fails to establish jurisdiction before this Court under the collateral order doctrine. The Fourth Circuit exercises statutory jurisdiction over final orders, 28 U.S.C. § 1291 (2006), and certain interlocutory orders, 28 U.S.C. § 1292 (2006). Additionally, the federal appellate courts have jurisdiction over a narrow band of collateral orders under *Cohen v. Beneficial Indus. Loan Corp.* and its progeny. 337 U.S. 541, 545–46 (1949). Iovino has no statutory grounds to appeal the Orders and so must rely on the collateral order doctrine. Her appeal, however, fails to establish jurisdiction under the collateral order doctrine's three prong test and must therefore be dismissed.

Additionally, Iovino's appeal does not comply with 28 U.S.C. § 2403(a) and Fed. R. App. P. Rule 44(a). She failed to properly notify the Court and the Government that her appeal involved constitutional issues. Iovino appeals the constitutionality of the Department of State's ("DoS") *Touhy* regulations (22 C.F.R. 172.1 – 172.9) (Appellant's Brief[3] at 14, 19–21, 50–55) and challenges DoS's application of those regulations

---

[3] "Appellant's Brief" as referred to herein, refers to Appellant's timely filed Opening Brief (ECF 20)), not Appellant's late filed brief (ECF 22, rejected by the Court) that included facts, law, and argument not found in her timely filed brief.

as "arbitrary and capricious" under the Administrative Procedure Act ("APA") (Appellant's Brief at 53–55).

MSA files this Motion to Dismiss Iovino's appeal for (1) lack of appellate jurisdiction; and (2) non-compliance with 28 U.S.C. § 2403(a) and Fed. R. App. P. Rule 44(a). MSA simultaneously moves to suspend the briefing schedule.

## II. BACKGROUND

*A. Relevant Facts Underlying The District Court Litigation*[4]

MSA provides security, intelligence, and investigative services, including explosive detection canine screening services. JA109. To that end, MSA operates the Diplomatic Security Global Canine Services Center (formerly known as the Canine Validation Center[5] ("CVC")) in Winchester, Virginia to train explosive detection canines and their

---

[4] MSA provides the Court with a brief factual background—not in an effort to litigate the merits of Iovino's underlying claims, which are still properly with the District Court— but instead to provide the Court with context as to whether Iovino's appeal relates to the merits of the District Court case.

[5] MSA will refer to the Diplomatic Security Global Canine Services Center as the "CVC" to remain consistent with the acronyms used in the District Court and Appellant's Brief (ECF 20).

handlers in support of DoS Contract No. SAQMMA16D0106 (the "DoS/MSA Contract"). JA110.

The DoS/MSA Contract contains stringent confidentiality requirements, including:

> The Contractor and its employees shall exercise the utmost discretion in regard to all matters relating to their duties and functions. **They shall not communicate to any person any information known to them by reason of their performance of services under this contract which has not been made public, except in the necessary performance of their duties or upon written authorization of the Contracting Officer. All documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and become the exclusive property of the U.S. Government.**

JA326 (emphasis added).

From October 9, 2015 to August 18, 2017, MSA employed Iovino as a part-time veterinarian at the CVC. JA020. Iovino signed a non-disclosure agreement ("NDA") with MSA to protect confidential information under the DoS/MSA Contract. JA111. Iovino disclosed confidential information to media outlets in violation of her NDA. JA112–13. Iovino also submitted a whistleblower hotline report to the DoS's Office of the Inspector General ("OIG") where she alleged improprieties in DoS and MSA operations at the CVC. JA034.

Iovino's contract with MSA expired and was not renewed on August 18, 2017. JA760. Iovino's part-time veterinarian position was being converted to a full-time position. MSA publicly advertised this position. Iovino applied for the position. JA760. Another (more qualified) candidate was selected to fill the full-time position. JA760.

On August 4, 2017, Iovino filed another complaint with the OIG alleging MSA terminated her as reprisal for whistleblowing. JA757. On October 30, 2019, the DoS OIG denied Iovino relief under 41 U.S.C. § 4712 because MSA "met its burden of presenting clear and convincing evidence" that the veterinarian hired "would certainly have been chosen over Dr. Iovino in the absence of the disclosures." JA762.

Dissatisfied with the agency's decision to deny Iovino any relief under 41 U.S.C. § 4712, Iovino filed suit against MSA in the U.S. District Court for the Western District of Virginia on September 21, 2021, alleging a single claim of "Discrimination in violation of 41 U.S.C § 4712," which was amended and re-filed on May 2, 2022. JA018.

*B. The District Court Touhy Litigation*

There have been a number of disputes in the District Court concerning the role of DoS's *Touhy* regulations in the litigation.[6] JA690. Iovino argues that she is entitled to conduct "unfettered" depositions of DoS and MSA personnel without "agency interference," regardless of the confidential nature of the DoS/MSA Contract and the sensitive federal government program that it governs. Appellant's Brief at 13; JA522.

Due to the DoS/MSA Contract (JA326) and Iovino's history of improperly disclosing confidential information (JA609), Magistrate Judge Hoppe entered a confidentiality order in the underlying litigation on October 13, 2022 (the "Confidentiality Order"). JA197. The Confidentiality Order rendered "all documents and testimony" deemed confidential by the United States Government to be "confidential information." JA197. Review of "documents related to Contract No. SAQMMA16D0106" was to take place under DoS's *Touhy* regulations. *Id.* Under the Confidentiality Order, DoS has reviewed and produced over 9,000 documents to Iovino via its *Touhy* process. JA607.

---

[6] The DoS's *Touhy* regulations can be found at 22 C.F.R. §§ 172.1 – 172.9.

On November 22, 2023, Iovino attempted to schedule depositions for a number of current and former MSA and/or DoS employees. JA566. After speaking with DoS, MSA informed Iovino that it could not provide any current or former MSA and/or DoS employees for deposition testimony without DoS approval. JA565. MSA informed Iovino that DoS would require the parties to submit a *Touhy* request stating the topics that would be covered in each deposition to allow DoS to protect its interests in confidential or sensitive topics regarding the DoS/MSA Contract. JA565.

Despite the Confidentiality Order, Iovino refused to submit *Touhy* requests to DoS, arguing that DoS's *Touhy* regulations do not apply to the depositions of "non-government employees of a private contractor." JA565. Iovino requested a hearing on this issue, which was held on January 8, 2024. MSA filed a motion for a protective order on January 23, 2024, arguing that the deposition testimony Iovino sought must be requested through DoS's *Touhy* process. JA565.

After a second hearing on the issue (the May 3, 2024 hearing (JA616)), Magistrate Judge Hoppe granted MSA's motion for a protective order on May 23, 2024, ordering: "Any party that seeks to obtain

deposition testimony from current and former State Department employees or contractors, including current or former MSA employees, regarding information related to MSA's contract with the State Department shall follow the State Department's Touhy regulations." JA667.

Iovino objected to Magistrate Judge Hoppe's May 23, 2024 Order. JA669. On July 24, 2024, District Judge Cullen affirmed Magistrate Judge Hoppe's Order. JA707; JA723. Iovino immediately appealed Judge Cullen's Order and the District Court, upon Iovino's request, issued a stay pending appeal.

## III. LEGAL STANDARDS

The Fourth Circuit has jurisdiction over the appeal of final orders under 28 U.S.C. § 1291; certain interlocutory orders under 28 U.S.C. § 1292; and a "narrow and selective" band of collateral orders pursuant to the Supreme Court's collateral order doctrine. *Will*, 546 U.S. at 350.

The collateral order doctrine artificially recognizes "finality" over a small category of orders that are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen* at 546. Orders

that qualify for appellate review must be "conclusive, [ ] resolve important questions separate from the merits, and [ ] are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995).

All three elements are considered "stringent" requirements that must be satisfied to qualify for collateral order review. *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). The collateral order doctrine is viewed as a "narrow" exception that should "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Id.* at 867 (internal citations omitted); *see also Will v. Hallock*, 546 U.S. 345, 350 (2006) ("[A]lthough the Court has been asked many times to expand the 'small class' of collaterally appealable orders, we have instead kept it narrow and selective in its membership.").

If an appeal fails to meet this Court's jurisdictional requirements, an appellee-defendant may move to dismiss the appeal "within the time allowed for the filing of the response brief." Fourth Circuit Rule 27(f)(2).

## IV. ARGUMENT

### a. Iovino Has Failed to Establish Appellate Jurisdiction.

As the Orders are not final under § 1291, or interlocutory under § 1292, Iovino must rely on the Supreme Court's "collateral order doctrine" in order to establish appellate jurisdiction. The Orders do not fit within that small category of cases that warrant appellate review because: (1) the pretrial discovery Orders can be amended by the District Court and therefore do not conclusively determine the disputed question on appeal; (2) the Orders are directly related to the merits of Iovino's case; and (3) the Orders are reviewable on appeal from a final judgment.

#### i. *The Orders Do Not Conclusively Determine The Disputed Question On Appeal.*

Pretrial discovery and protective orders, such as those Iovino appeals, generally do not warrant appellate review under the collateral order doctrine because they can often be amended by the issuing court and thus do not conclusively determine a disputed issue. An order "conclusively" determines the disputed question on appeal when the order is a "fully consummated decision" and "a complete, formal, and . . . final" resolution of the disputed question. *Abney v. U.S.*, 431 U.S. 651, 659 (1977). An order cannot be considered "fully consummated" if there

is any indication that the judge may reconsider his decision or the decision is subject to review. *Coopers & Lybrand*, 437 U.S. at 469 (finding an order does not conclusively determine the disputed question when the order is "subject to revision").

The review of pretrial orders rarely qualifies for appellate collateral review. It is a "rare case when appeal after final judgment will not cure an erroneous discovery order, [because] a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981)[7]; *see also* 15B Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3914.23 (2d ed. 2024) ("Despite the continued assaults of many litigants, the rule remains settled that most discovery rulings are not final.").

"[S]uccessive, piecemeal appeals" of pretrial orders (*e.g.*, discovery and protective orders) "unduly delay the resolution of District Court

---

[7] In *Firestone*, the Supreme Court found that a pretrial order disqualifying counsel was that rare instance wherein the first prong of the collateral order doctrine was satisfied because "the only issue is whether challenged counsel will be permitted to continue his representation". *Id.* at 377. The Supreme Court, however, found that the plaintiff did not meet the second and third prongs of the collateral order doctrine. *Id.* at 379–81.

litigation and needlessly burden the Courts of Appeals." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 112 (2009); *see also* 15B Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3914.23 (2d ed. 2024) ("Routine appeal from disputed discovery orders would disrupt the orderly progress of the litigation, swamp the courts of appeals, and substantially reduce the district court's ability to control the discovery process.").

The Fourth Circuit consistently denies collateral order review of pretrial orders. In *MDK, Inc. v. Mike's Train House, Inc.*, this Court did not extend jurisdiction over the appeal of a pretrial order requiring the parties to negotiate a confidentiality order to protect confidential information. 27 F.3d 116, 119 (4th Cir. 1994). This Court held that appellate "courts have routinely declined to extend the collateral order doctrine to discovery rulings." *Id.* at 121–22. This is because "[a]llowing immediate appeal of the orders resolving discovery disputes would only disrupt and delay district court proceedings and clog the courts of appeals with matters more properly managed by trial courts familiar with the parties and their controversy." *Id.* at 119.

Here, Iovino appeals pretrial discovery orders that resolve *how* Iovino can obtain confidential information via deposition testimony. Any number of issues relating to the District Court's purview could arise and cause the District Court to reconsider its position as to what information is confidential in this case and whether its release requires DoS approval. While the District Judge did grant MSA's motion for a protective order, the District Judge also specifically stated that the "court expects MSA and the State Department to abide by their representations that they will expeditiously process Iovino's discovery requests and will not unduly restrict her access to deposing relevant individuals." JA721–22.

The District Judge further noted that he will be tracking MSA's and DoS's efforts by directing "the parties and the State Department to file concise reports on the status of Iovino's *Touhy* requests and any other open discovery items." JA722. The District Judge explicitly left the door open for the Court to step in and revise the discovery process if any of the parties are not abiding by the Orders. As such, the Orders cannot be considered "fully consummated" as the District Judge left room to reconsider or revise his decision if MSA, Iovino, or DoS were not acting in accordance with the Orders. *Abney v. U.S.*, 431 U.S. at 659.

The Orders provide Iovino a path to obtain deposition testimony and proceed with her case. Allowing this appeal to proceed will create a snowball effect of "immediate appeal of [] orders resolving discovery disputes" which "would only disrupt and delay district court proceedings and clog the courts of appeals with matters more properly managed by trial courts familiar with the parties and their controversy." *MDK, Inc.*, 27 F.3d at 119.

Iovino's appeal does not satisfy the first prong of the collateral order doctrine. It must be dismissed for lack of appellate jurisdiction. *Digital Equip. Corp.*, 511 U.S. at 868 (finding all three elements of the collateral order doctrine are "stringent" requirements that must be satisfied in order to qualify for collateral order review by an appellate court).

**ii. *The Orders do not resolve an important issue completely separate from the merits of the action.***

Assuming, *arguendo,* that Iovino met prong one of the collateral order doctrine (she does not), she would still need to meet prongs two and three of that test to establish appellate jurisdiction. *See Dig. Equip. Corp.*, 511 U.S. at 868 (finding all three elements must be met to establish appellate jurisdiction). Iovino does not meet prong two of the collateral order doctrine. Any relief this Court provides as to the Orders

will be inextricably intertwined with the merits of her underlying claims. *Coopers & Lybrand*, 437 U.S. at 468.

Iovino argues that the second prong of the collateral order doctrine is satisfied because resolution of the question concerning the DoS's *Touhy* authority does not require the Court to "delv[e] into the facts surrounding Dr. Iovino's whistleblowing activities, or MSA's reasons for terminating her contract." Appellant's Brief at 11. This is not the "merits" standard the Court must apply.

In *Richardson-Merrell, Inc. v. Koller*, the Supreme Court held that court orders disqualifying counsel, as a class, were inextricably tied to the merits of the underlying case because those orders have the potential to affect the "course of the trial", *i.e.*, the merits. 472 U.S. 424, 439–40 (1985). Specifically, the Supreme Court found the appellate court, which it overturned, had to make an exhaustive review of the plaintiff's claim on the merits. *Id.* In other words, the collateral order doctrine is not satisfied just because the issue being appealed does not immediately involve deciding the merits of the case. The question is whether the issue has the *potential* to affect the merits of the case.

The Fourth Circuit consistently holds that "an order is only 'collateral' to the merits of a case if it does not 'involve considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Cobra Nat. Res., LLC v. Fed. Mine Safety & Health Review Comm'n*, 742 F.3d 82, 89–90 (4th Cir. 2014) (internal citations omitted). To determine whether the challenged order is separate from the merits, the Fourth Circuit looks to whether the order "addressed a procedural issue that the defendants claimed was central to the action's viability." *McEvoy v. Diversified Energy Co.*, 111 F.4th 330, 335 (4th Cir. 2024).

Here, Iovino appeals the Orders with three stated purposes: (1) to "gather the evidence necessary to prove [Iovino's] whistleblower retaliation claim" (Appellant's Brief at 12); (2) to obtain "unfettered" access to sensitive DoS materials (*Id.* at 13); and (3) to share those documents amongst various clients as Iovino's counsel plans future lawsuits against MSA (*Id.* at 52–53). Iovino thus challenges the Orders because of their direct effect on her ability to *proceed* with her whistleblower complaint under 41 U.S.C. § 4712. *Id.* at 41–50. Thus, the Orders, to Iovino, address a *procedural* issue central to the viability of

Iovino's claim (*i.e.*, affecting the course of the trial). *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 439–40 (1985).

Appellant's Brief is replete with references to how the District Court's protective order prohibits her from litigating her claim. For instance, Iovino claims her compliance with the protective order:

- "[N]ecessarily imposes a substantial burden on her ability to gather the evidence necessary to prove her whistleblower retaliation claim." Appellant's Brief at 12;

- Might preclude Iovino from "establish[ing] the elements of her claim, leading to an adverse judgment." *Id.*; and

- Will affect ". . .Dr. Iovino's requests to depose employees and representatives of MSA about matters relevant to the parties' claims and defenses in the underlying action." *Id.* at 17.

ECF 20. Iovino argues that winning on the merits of her case below will be more difficult in light of the protective order's procedural hurdles. Iovino appeals the protective order's effect on the "course of the trial", *i.e.*, the merits, prior to finality. *Richardson-Merrell, Inc.*, 472 U.S. at 439–40.

Iovino fails the second prong of the collateral order doctrine. Her claim is inextricably tied to the merits of her case. Again, it must be dismissed for lack of appellate jurisdiction.

#### iii. *The Orders are reviewable on appeal from a final judgment.*

Finally, Iovino cannot establish jurisdiction under the third prong of the collateral order doctrine. Her claims regarding the scope of *Touhy* are reviewable on appeal of final judgment. *Cohen*, 337 U.S. at 546. Iovino argues that appellate jurisdiction under the collateral order doctrine is proper because her "right to conduct discovery in support of her whistleblower claim in accordance with the FRCP, unfettered by agency interference, would be effectively lost if she is forced to comply with DoS' *Touhy* regulations in order to obtain testimony from Defendant's representatives." Appellant's Brief at 13. Iovino also argues that the District Court's ruling "implicates important public interests in government transparency and whistleblower protection that warrant immediate appellate review." *Id.*

The Supreme Court "routinely require[s] litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system." *Mohawk Indus., Inc.*, 558 U.S. at 112. "To be 'effectively unreviewable,' an order must protect an interest that would be 'essentially destroyed if its vindication must be postponed until trial is completed.'" *S.C. State Bd. of Dentistry*, 455 F.3d at 443

(explaining it is the "avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later"). In other words, an interest is effectively unreviewable if an appeal after final judgment will do nothing to vindicate the interest. When determining "whether an order would be effectively unreviewable on appeal from a final judgment," the Supreme Court considers "whether delaying review 'would imperil a substantial public interest' or 'some particular value of high order.'" *Campbell—McCormick, Inc.*, 874 F.3d at 396 (quoting *Will*, 546 U.S. at 352–53).

Considering only a "small class" of issues fall under the purview of the collateral order doctrine, the Supreme Court has found that several issues are "not sufficiently important" for collateral order review. *Mohawk Indus., Inc.*, 558 U.S. at 112 (finding no jurisdiction over a pretrial discovery order rejecting an attorney-client privilege claim); *Will*, 546 U.S. at 352–53 (finding no jurisdiction over a pretrial order rejecting application of the Federal Tort Claims Act's judgment bar); *Digital Equip. Corp.*, 511 U.S. at 868 (finding no jurisdiction over a court ruling that declined to enforce a settlement agreement in a trademark case).

Not even the disqualification of counsel qualifies as an issue warranting immediate appellate review, despite the importance in a party's choice of counsel to steer and direct litigation. *Firestone Tire*, 449 U.S. at 379–81.

Likewise, the Fourth Circuit consistently narrows the class of issues that fall under the collateral order doctrine. *Dubon v. Jaddou*, 109 F.4th 307, 311–12 (4th Cir. 2024) (finding no jurisdiction over an "order remanding a case to an agency for further proceedings"); *Cirillo v. Citrix Sys., Inc.*, No. No. 22-1310, 2022 WL 19236849, at *1 (4th Cir. Dec. 13, 2022) (finding no jurisdiction over an order granting a motion for judgment on the pleadings and granting conditional class certification because FLSA claims and claims under the Family and Medical Leave Act were still pending in the District Court); *Campbell—McCormick, Inc.*, 874 F.3d at 395–96 (finding no jurisdiction over the right to keep state law claims in federal court); *Cobra Nat. Res., LLC*, 742 F.3d at 92 (finding no jurisdiction over "a coal operator's financial interest in avoiding wage payments to a reinstated miner"); *S.C. State Bd. of Dentistry*, 455 F.3d at 439 (finding no jurisdiction over an order denying state action antitrust immunity).

The Orders Iovino appeals do not fall within the "small class" of issues that may be reviewed prior to a final judgment. *Cohen*, 337 U.S. at 546. The Orders Iovino appeals are pretrial discovery orders, which the Supreme Court has already determined is an "issue" not reviewable under the collateral order doctrine because "[e]ffective appellate review can be had by other means." *Mohawk Indus., Inc.*, 558 U.S. at 114. The Supreme Court finds it "rare" that a pretrial discovery order cannot be appealed after a final judgment. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981) ("In the rare case when appeal after final judgment will not cure an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling."). *Id.*

The Orders Iovino appeals are pretrial discovery orders requiring Iovino to comply with DoS's well-established *Touhy* regulations in seeking to depose current and/or former MSA and/or DoS employees. Because the DoS/MSA Contract requires MSA's confidentiality and deals with a sensitive federal government program, the District Court found it especially important to require compliance with *Touhy* (noting "MSA is justifiably concerned about additional disclosures that would potentially

cause additional harm if Paragraph 2(a)(iii) is not included in the Confidentiality Order" (JA609)). Nothing about the Orders requires Iovino to do anything that could not be effectively reviewed on appeal post-judgment, as discovery issues are routinely reviewed upon appeal. *Firestone Tire & Rubber Co.*, 449 U.S at 377.

Iovino's contention that this issue (a challenge to the well-established line of *Touhy* jurisprudence) is of such great import that it warrants immediate appellate review is also unconvincing. Appellant's Brief at 13. First, the only harm Iovino proffers is having to get DoS to approve of her deposition requests. In other words, Iovino's stated harm is that a neutral third party with contractual (and sovereign) rights in the underlying information has the opportunity to review her deposition requests and determine whether it wants to assert privilege over those contractual and/or sovereign rights. This is not a threat to whistleblower cases. Iovino has been on notice of this very issue since the District Court enacted the Confidentiality Order. Iovino sat on her hands for nearly two years before raising her urgent appeal warranting immediate resolution. This issue is not urgent. Immediate resolution is neither necessary nor warranted.

Iovino's appeal does not satisfy the third prong of the collateral order doctrine, it must be dismissed for lack of appellate jurisdiction. *Digital Equip. Corp.*, 511 U.S. at 868 (finding all three elements of the collateral order doctrine are "stringent" requirements that must be satisfied in order to qualify for collateral order review by an appellate court).

**b. Iovino Failed to Comply with 28 U.S.C. § 2403(a) and Fed. R. of App. P. Rule 44.**

Iovino's appeal also fails to comply with 28 U.S.C. § 2403(a) and Fed. R. App. P. Rule 44(a). Under Fed. R. App. P. Rule 44(a):

> If a party questions the constitutionality of an Act of Congress in a proceeding in which the United States or its agency, officer, or employee is not a party in an official capacity, the questioning party must give written notice to the circuit clerk immediately upon the filing of the record or as soon as the question is raised in the court of appeals.

Once the Court is notified of the existence of a constitutional question, "[t]he clerk must then certify that fact to the Attorney General" pursuant to the requirements set forth in 28 U.S.C.A. § 2403(a), which states:

> In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for

> presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

Here, Iovino's appeal challenges the constitutionality of a federal statute by arguing that (1) DoS's *Touhy* regulations violate the "separation of powers" (Appellant's Brief at 14, 19–21, 50–55); and (2) DoS's *Touhy* regulations are "arbitrary and capricious" (Appellant's Brief at 53–55). Iovino was required to properly notify the Court and the U.S. Government whether any constitutional issues would be raised in her brief in order for the Attorney General to decide whether intervention was warranted. Not only did Iovino fail to make these representations, but she also moved to expedite the case knowing that the Solicitor General's office was determining whether intervention was required to protect the Government's sovereign interests. *See* ECF No. 11-4 (Iovino's motion to expedite cites a DOJ email in which the Government opposes expediting the appeal in order to allow for the Solicitor General to determine whether intervention was warranted).

In short, Iovino's appeal, in the guise of a challenge to a protective order, is actually a separation of powers challenge to DoS's interpretation of the federal housekeeping statute under the APA. By failing to put the

Government on notice, Iovino subverts the Government's interests in protecting its confidential information. For these reasons alone, Iovino's appeal should be dismissed.

## V. MOTION TO SUSPEND THE BRIEFING SCHEDULE

Pursuant to Fourth Circuit Rule 27(f)(3), MSA moves for this Court to suspend briefing on this appeal pending the Court's ruling on MSA's motion to dismiss. The issues MSA raises in this motion to dismiss warrant significant consideration from this Court. MSA should not be made to expend time and money defending the District Court's pretrial Orders while the Court resolves its motion to dismiss.

## VI. CONCLUSION

For all the reasons stated herein, MSA respectfully requests that this Court grant its motion to dismiss and its request to suspend the briefing schedule.

## VII. STATEMENT OF OPPOSING COUNSEL'S POSITION

Pursuant to Fourth Circuit Rule 27(a), counsel for Iovino was informed of the intended filing of this Motion on September 24, 2024. Counsel for Iovino objects to the relief sought herein.

Respectfully submitted,

Filed: September 24, 2024

/s/ Daniel S. Ward

Daniel S. Ward
WARD & BERRY, PLLC
1751 Pinnacle Drive, Ste. 900
Tysons, VA 22102
(202) 331-8160
dan@wardberry.com

*Counsel for Defendant-Appellee Michael Stapleton Associated, Ltd.*

Of Counsel:

Ryan C. Berry
ryan@wardberry.com

P. Tyson Marx
pmarx@wardberry.com

Chelsea A. Padgett
chelsea@wardberry.com

## CERTIFICATE OF SERVICE

In accordance with Local Rule 25(a)(4), I hereby certify that on September 24, 2024, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Nate L. Adams, III
HALL, MONAHAN, ENGLE, MAHAN & MITCHELL
9 East Boscawen Street
P.O. Box 848
Winchester, VA 22601
nadams@nadamslaw.com

Thad M. Guyer
T.M. GUYER & AYERS & FRIENDS, PC
116 Mistletoe Street
P.O. Box 1061
Medford, OR 97501
tmguyer@tmguyer.com
thad@guyerayers.com

John A. Kolar
Elisabeth R. Connell
GOVERNMENT ACCOUNTABILITY PROJECT
1612 K Street NW, Ste. 808
Washington, D.C. 20006
jackk@whistleblower.org
elisabethc@whistleblower.org

/s/ Daniel S. Ward

______________________

Daniel S. Ward

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

**No.** 24-1735 **Caption:** Iovino v. Michael Stapleton Associates, Ltd.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

- [x] this brief or other document contains 5053 [*state number of*] words
- [ ] this brief uses monospaced type and contains ______ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

- [x] this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word [*identify word processing program*] in 14-point Century Schoolbook [*identify font size and type style*]; **or**
- [ ] this brief or other document has been prepared in a monospaced typeface using ______ [*identify word processing program*] in ______ [*identify font size and type style*].

(s) /s/ Daniel S. Ward

Party Name Michael Stapleton Associates, Ltd.

Dated: 09/24/2024

Print to PDF for Filing Reset Form