**No. 24-1735**

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

KAREN IOVINO

*Plaintiff-Appellant,*

v.

MICHAEL STAPLETON ASSOCIATES, LTD, d/b/a MSA Security Inc.

*Defendant-Appellee.*

---

# PLAINTIFF-APPELLANT'S RESPONSE IN OPPOSITION TO DEFENDANT-APPELLEE'S MOTION TO DISMISS

---

GOVERNMENT ACCOUNTABILITY PROJECT
John A. Kolar
Elisabeth R. Connell
1612 K St., N.W., Suite 808
Washington, DC 20006
Jackk@whistleblower.org
ElisabethC@whistleblower.org

Thad M. Guyer
T.M. GUYER AND AYERS & FRIENDS, PC
116 Mistletoe Street
Medford, OR 97501
thad@guyerayers.com
(202) 417-3910

*Attorneys for Plaintiff-Appellant*

TABLE OF CONTENTS


I. INTRODUCTION ..... 5

II. MSA LACKS STANDING AND CONSTITUTIONAL AUTHORITY TO ASSERT TOUHY REGULATIONS THAT ONLY THE GOVERNMENT CAN ENFORCE ..... 6

A. MSA Lacks Standing to Assert Touhy Compliance in its Motion to Dismiss..... 6

B. It is Unconstitutional to Allow MSA to Act in the Place of the State Department ..... 8

C. Lack of Standing and Unconstitutionality May be Raised for the First Time on Appeal..... 10

III. THE *TOUHY* ORDERS PRECISELY SATISFY THE STRINGENT REQUIREMENTS FOR APPEALABILITY UNDER THE COLLATERAL ORDER DOCTRINE..... 11

A. The *Touhy* Orders are Final, Immutable and Conclusive ..... 11

B. The *Touhy* Issue is Entirely Separate and Distinct from the Merits of Dr. Iovino's Action Against MSA..... 13

C. The *Touhy* Orders are Entirely Unreviewable on Appeal from a Final Judgment..... 17

IV. 28 U.S.C. § 2403(A) AND FED. R. APP. P. 44 DO NOT APPLY OR JUSTIFY DISMISSAL ..... 21

A.The Statute and Rule Have No Application to Regulatory Challenges.... 22

B. Even if Applicable, the Department of Justice Has Actual Notice and Failure of Notice Does Not Warrant Dismissal ..... 23

V. THE IRONY OF MSA'S § 2403(A) ARGUMENT IS THAT IT FURTHER SUPPORTS THIS APPEAL'S INCLUSION IN THE "SELECTIVE MEMBERSHIP" OF *COHEN* EXCEPTIONAL CASES. ..... 24

VI. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

## SUPREME COURT CASES

*Buckley v. Valeo*, 424 U.S. 1, 140 (1976) ........ 7
*California v. Texas*, 593 U.S. 659 (2021) ........ 7
*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949) ........ 4
*Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 12 (2001) ........ 19
*Flanagan v. United States*, 465 U.S. 259, 268 (1984) ........ 13
*Lucia v. SEC*, 585 U.S. 237, 245 (2018) ........ 8
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ........ 6
*Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985) ........ 12
*Seila Law LLC v. CFPB*, 591 U.S. 197, 219 (2020). ........ 9
*Spokeo, Inc. v. Robins*, 578 U. S. 330, 338 (2016) ........ 7
*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95 (1998) ........ 9
*TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021) ........ 7
*Will v. Hallock*, 546 U.S. 345, 350 (2006) ........ 4,23

## FOURTH CIRCUIT CASES

*Cobra Nat. Res., LLC v. Fed. Mine Safety & Health Review Comm'n*, 742 F.3d 82, 90 (4th Cir. 2014) ........ 15
*Davison v. Randall*, 912 F.3d 666, 677 (4th Cir. 2019). ........ 9
*Hunton & Williams v. U.S. Department of Justice*, 590 F.3d 272 (4th Cir. 2010).. 18
*John and Jane Parents 1 v. Montgomery County Board of Education*, 78 F.4th 622, 629 (4th Cir. 2023) ........ 9
*Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) ........ 7
*McEvoy v. Diversified Energy Co.*, 111 F. 4th 330, 335 (4th Cir. 2024) ........ 14
*MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 119 (4th Cir. 1994) ........ 11
*S.C. State Bd. of Dentistry v. F.T.C.*, 455 F.3d 436, 443 (4th Cir. 2006) ........ 17

## OTHER CIRCUIT APPEALS CASES

*Bottineau Farmers Elevator v. Woodward-Clyde Consultants*, 963 F.2d 1064, 1075, fn. 10 (8th Cir. 1992). ........ 23
*Finch v. Mississippi State Med. Ass'n, Inc.,* 585 F.2d 765, 779 (5th Cir. 1978), *modified,* 594 F.2d 163 (5th Cir. 1979) ........ 23
*Merrill v. Town of Addison,* 763 F.2d 80, 83 (2d Cir.1985) ........ 23

*Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997) .............................................. 23

FOURTH CIRCUIT DISTRICT COURT CASES

*Buchanan Cnty., Virginia v. Blankenship,* 545 F. Supp. 2d 553, 555, fn. 3 (W.D. Va. 2008) ........................................................................................................... 23

STATUTES

28 U.S.C. § 2403(a) ........................................................................... 4, 20, 21
41 U.S.C. § 4712 ........................................................................................ 15
5 U.S.C. § 301 ......................................................................................... 20, 21

RULES

Fed. R. App. P. 44 (a) ................................................................................. 4, 21

REGULATIONS

22 CFR § 172.1(b............................................................................................ 8
22 CFR § 172.3(a)........................................................................................... 8
22 CFR § 172.6(a)........................................................................................... 8

Pursuant to FRAP 27 and LR 27, Plaintiff-Appellant submits this opposition to Defendant-Appellee's Motion to Dismiss.

## I. INTRODUCTION

MSA's miscalculated preliminary Motion argues that Dr. Iovino's appeal should be dismissed for (1) lack of appellate jurisdiction; and (2) non-compliance with 28 U.S.C. § 2403(a) and Fed. R. App. P. Rule 44 (a). ECF 36 at 4. MSA's Motion should be denied because (1) this Court has jurisdiction in this appeal under the collateral order doctrine established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949); and (2) 28 U.S.C. § 2403(a) and Fed. R. App. P. Rule 44 (a) do not apply, or warrant dismissal in any event.

As further explained in Dr. Iovino's Brief and herein, the *Touhy* Orders issued by the District Court at issue in this appeal, which mandate that Dr. Iovino must follow the United States Department of State's ("DoS" or "the Department") *Touhy* regulations in order to obtain deposition testimony from any current or former employees of MSA (JA 667), fall precisely within the "narrow and selective" collateral order doctrine. *Will v. Hallock*, 546 U.S. 345, 350 (2006). Accordingly, Dr. Iovino appropriately brought this immediate appeal challenging MSA's standing to assert DoS' *Touhy* regulations and the constitutionality of the *Touhy* Orders.

The constitutionality of DoS' *Touhy* regulations, where they are

appropriately asserted by DoS, and the Housekeeping Statute that provides agency authority to promulgate these regulations are not at issue in this appeal. As such, neither 28 U.S.C. § 2403 (a) nor Fed. R. of App. P. Rule 44 apply and Dr. Iovino's purported "noncompliance" with these rules fails to justify dismissal of her appeal. Rather, the issue is MSA's standing, or lack thereof, to assert the Department's *Touhy* regulations as a shield for itself in federal civil litigation and the affront to separation of powers that results from the *Touhy* Orders. The *Touhy* Orders conclusively resolve a significant issue with broad implications, which is entirely separable from the merits of Dr. Iovino's whistleblower retaliation case against MSA, and which will entirely evade meaningful appellate review absent the appeal at bar. The *Touhy* Orders are thus appropriately considered final and appealable under the collateral order doctrine.

## II. MSA LACKS STANDING AND CONSTITUTIONAL AUTHORITY TO ASSERT TOUHY REGULATIONS THAT ONLY THE GOVERNMENT CAN ENFORCE

### A. <u>MSA Lacks Standing to Assert Touhy Compliance in its Motion to Dismiss</u>

MSA, as a private litigant, lacks standing to seek enforcement of DoS' *Touhy* regulations because they confer no rights upon MSA. To establish standing, a party must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical". *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The

irreducible constitutional minimum of standing contains three elements. First, an injury in fact of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, a causal connection between the injury and the conduct complained of and not the result of an independent action of a party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560-61. MSA cannot meet these criteria with this speculative argument to the District Court in its response to Iovino's Objections to Magistrate's Memorandum Opinion and Order (ECF 175):

> If the Court does not grant a protective order, *MSA risks breaching its contract* with DoS and subjecting itself to the repercussions that come with breaching a U.S. Government contract. Further (and unlike the facts in *Menocal*), *MSA risks its status as a government contractor* if it provides current and/or former DoS employees or MSA employees (who are DoS contractors) for depositions without DoS approval.

JA 695 (emphasis added). Such implausible risks fall far short of the required injury in fact. This also highlights the fundamental flaw of MSA's entire *Touhy* argument-- it is MSA, not Iovino, who was required to ask DoS lawyers to approve the requested depositions.

When a party claiming standing is not the direct subject of government action, but rather claims a right based on application of government's regulation to someone else, establishing standing is "substantially more difficult." *Lujan,* 504 U.S. at 562. MSA lacks standing to enforce *Touhy* regulations against Dr. Iovino

because MSA is not the subject of these regulations. *See California v. Texas*, 593 U.S. 659, 670 (2021) (party must demonstrate a "realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement"); *Spokeo, Inc. v. Robins*, 578 U. S. 330, 338 (2016). In *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012), this Court emphasized that when an asserted injury arises from the government's regulation of someone else, traceability of an injury back to the party asserting standing is particularly difficult, citing *Lujan*, 504 U.S. at 562. More recently in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021), the Court emphasized that Article III standing requires a concrete injury and a party cannot allege a "bare procedural violation, divorced from any concrete harm," and satisfy the injury-in-fact requirement of Article III. The mere fact that *Touhy* regulations exist and MSA will be disadvantaged if they are not enforced against its adversary does not confer standing.

### B. It is Unconstitutional to Allow MSA to Act in the Place of the State Department

Allowing MSA to assert and enforce DoS *Touhy* regulations violates the Appointments Clause, which is an adjunct argument to Iovino's separation of powers objections. As the Supreme Court held in *Buckley v. Valeo*, 424 U.S. 1, 126, 140 (1976), conducting civil litigation on behalf of the United States to vindicate public rights constitutes "significant authority" reserved for properly appointed officers. MSA's assertion of these regulations is not an isolated event,

but part of a practice being adopted by the State Department as a delegated power of its private contractors within the meaning of the "continuing position" criterion established in *Lucia v. SEC*, 585 U.S. 237, 245 (2018). This represents an ongoing role for MSA rather than a temporary assignment. This Court need look no further for than 22 CFR § 172.1(b) which provides that, "the term employee includes *** *all employees and former employees* of the Department of State *** subject to the supervision, jurisdiction, or control of the Secretary of State *** including United States nationals, foreign nationals, *and contractors*." (Emphasis added). If MSA has this authority, then the DoS has deputized all of its corporate contractors to enforce its *Touhy* regulations. These private corporations are, indeed, the government by that logic.

Even assuming arguendo that the DoS can define "employee" to include a corporate "contractor", that role does not entail any enforcement actions whatsoever. First, as soon as MSA as an "employee" received the notice of depositions from Iovino, 22 CFR § 172.3(a) instructed that employee to take the matter to the DoS Office of Legal Advisor, or if already represented by the DOJ, then to the DOJ lawyer. Nothing in the regulations authorize the DoS to tell the "employee" to go and hire a private lawyer and litigate. Second, under 22 CFR § 172.6(a), when demands for documents or testimony are made in a court, employees don't go get their own private lawyers and litigate, the matter is

exclusively given to government lawyers, i.e. "*either a Department of Justice attorney or a Department attorney designated for the purpose," who will then* "appear with the employee upon whom the demand has been made ***."

By MSA as a private contractor-- with private lawyers-- being allowed by the District Court to enforce these regulations, MSA has been unconstitutionally vested with "quintessentially executive power" without proper appointment, plainly violating the constitutional structure outlined in *Seila Law LLC v. CFPB*, 591 U.S. 197, 219 (2020). As the Court there states: "As Madison explained, '[I]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws.'" *Id.* at 213.

### C. <u>Lack of Standing and Unconstitutionality May be Raised for the First Time on Appeal</u>

The issues of MSA's lack of standing and the unconstitutionality of allowing a private entity to assert governmental regulations can be properly raised for the first time on appeal, especially given that MSA has put these arguments at issue with its Motion to Dismiss for Lack of Jurisdiction. *See John and Jane Parents 1 v. Montgomery Cnty. Bd. of EduC.*, 78 F.4th 622, 628 (4th Cir. 2023) (because standing is jurisdictional, a challenge to injury in fact may be raised and addressed for the first time on appeal) (*citing Davison v. Randall*, 912 F.3d 666, 677 (4th Cir. 2019); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95 (1998) ("[E]very federal appellate court has a special obligation to 'satisfy itself

not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it.") (citation omitted).

## III. THE *TOUHY* ORDERS PRECISELY SATISFY THE STRINGENT REQUIREMENTS FOR APPEALABILITY UNDER THE COLLATERAL ORDER DOCTRINE

### A. The *Touhy* Orders are Final, Immutable and Conclusive

The two *Touhy* orders being appealed are not contingent, tentative or wishy-washy-- they are iron-clad. In strong, immutable terms, the magistrate's ruling requires Dr. Iovino to fully concede and acquiesce that a hostile agency through its corporate proxy shall filter her deposition requests (JA 667) and the District Court's order affirming the Magistrate's ruling adds in its own strongly worded rejections of Dr. Iovino's arguments. JA 711-719. The controlling question is purely collateral to the merits, to wit, whether Dr. Iovino will be required to comply with DoS' *Touhy* regulations and receive approval from DoS before noticing depositions of any representatives of MSA, which is conclusively resolved by the *Touhy* Orders. JA 667, JA 723. MSA disingenuously argues that the *Touhy* Orders do not conclusively determine this issue, asserting that they simply "resolve *how* Iovino can obtain confidential information via deposition testimony [and that] [a]ny number of issues relating to the District Court's purview could arise and cause the District Court to reconsider its position as to what information is confidential in this case and whether its release required DoS

approval." ECF 36 at 14. In fact, the *Touhy* Orders plainly command Dr. Iovino to seek leave of the sovereign on bended knee or get no depositions. JA 667, JA 723. The District Court's articulation of the fact that it "expects MSA and the State Department to abide by their representations that they will expeditiously process Iovino's discovery requests and will not unduly restrict her access to deposing relevant individuals," in no way alleviates the finality of its determination that Dr. Iovino must comply with the Department's *Touhy* regulations in order to take any depositions. JA 667, JA 721-724.

MSA argues that the *Touhy* Orders do not satisfy the first requirement of conclusively determining a disputed question, in essence arguing that this appeal presents just another garden variety discovery dispute between private parties, which appellate courts routinely decline to extend the collateral order doctrine to. ECF 36 at 11-13. Indeed, this Court has noted that discovery rulings and other pretrial orders rarely qualify for appellate review because most discovery rulings are not final. *See, e.g., MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 119 (4th Cir. 1994). The *Touhy* Orders, however, are nothing akin to typical discovery orders, which don't normally require compliance with an executive branch regulation as a condition precedent to issuing a notice of deposition for a representative of a private opposing litigant.

The distinct nature of the *Touhy* Orders, as compared to discovery orders

that are not appealable under the collateral order doctrine, is evident from the fact that they present no opportunity for Dr. Iovino to earn a contempt citation from which to take a collateral appeal. This Court has explained that it is a "rare case when appeal after final judgment will not cure an erroneous discovery order, [because] a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981). Here, in stark contrast, even if Dr. Iovino wanted to be found in contempt, there is no opportunity to earn that punishment. The *Touhy* Orders effectively state that "if" Dr. Iovino wants depositions, then she must obtain agency approval through DoS' *Touhy* procedures. JA 667, JA 723. Failing to seek that approval will not violate the *Touhy* Orders, it will simply prevent Dr. Iovino from taking depositions of any representatives of MSA.

### B. The *Touhy* Issue is Entirely Separate and Distinct from the Merits of Dr. Iovino's Action Against MSA

Largely relying on the Supreme Court's decision in *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985), which held that orders disqualifying counsel in a civil case are not collateral orders, MSA next erroneously posits that the second prong of the collateral order doctrine is not satisfied in this appeal because the relevant "question is whether the issue has the *potential* to affect the merits of the case." ECF 36 at 16. This overgeneralization misstates the Supreme Court's

analysis of the second prong of the collateral order doctrine in *Richardson-Merrell*, wherein the Court explained:

> We must likewise reject the Court of Appeals' suggestion that civil orders disqualifying counsel satisfy the second condition of the collateral order exception. To do so it is enough to rely on *Flanagan.* If the nature of the right to representation by counsel of one's choice is that "[it] is not violated absent some specifically demonstrated prejudice," *ibid.,* then a disqualification order, though "final," is not independent of the issues to be tried. Only after assessing the effect of the ruling on the final judgment could an appellate court decide whether the client's rights had been prejudiced. If respondent were to proceed to trial and there receive as effective or better assistance from substitute counsel than the disqualified attorney could provide, any subsequent appeal of the disqualification ruling would fail. For the same reasons as in *Flanagan,* the disqualification ruling would be inextricably tied up in the merits.

472 U.S. at 438–39 (citing *Flanagan v. United States*, 465 U.S. 259, 268 (1984)). In further support of its conclusion that disqualification orders are not sufficiently separable to qualify as final and appealable under the collateral order doctrine, the *Richardson-Merrell* court noted that "orders disqualifying attorneys on the ground that they should testify at trial, for example, are inextricable from the merits because they involve an assessment of the likely course of the trial and the effect of the attorney's testimony on the judgment." *Id.* at 439. Accordingly, the question is <u>not</u> merely whether the issue has the potential to affect the course of trial, but whether an assessment of the outcome or the likely course of trial is necessary to resolve the issue.

As the Court in *Richardson-Merrell* explains, that assessment is required in

an appeal from a disqualification order, because the right to be represented by counsel of one's choice is not violated absent specifically demonstrated prejudice. *Id*. Thus, the violation of that right can only be determined after the effect of the disqualification ruling on the final judgment can be assessed. *Id*. Such is not the case in the context of the *Touhy* Orders, regardless of Dr. Iovino's contention that they prejudice her ability to proceed with her whistleblower complaint, because the *Touhy* Orders have the immediate effect of prejudicing Dr. Iovino's rights as a private litigant to conduct and obtain discovery from the opposing party in accordance with the Federal Rules of Civil Procedure. No assessment of the outcome or likely course of trial is necessary to assess the immediate impact of the *Touhy* Orders on Dr. Iovino's rights as a private litigant in an Article III court, or the issues raised in this appeal.

*McEvoy v. Diversified Energy Co.*, 111 F. 4th 330, 335 (4th Cir. 2024) also cited by MSA, further supports the conclusion that the second prong of the collateral order doctrine is satisfied in this appeal. MSA cites *McEvoy* to support its assertion that "[t]o determine whether the challenged order is separate from the merits, the Fourth Circuit looks to whether the order 'addressed a procedural issue that the defendants claimed was central to the action's viability." ECF 36 at 17, quoting *McEvoy*, 111 F. 4th at 335. The appeal in *McEvoy,* however, was from an order denying a motion for judgment on the pleadings under Rule 12(c), which

raised issues the court noted "would require us to decide… issues that are key to a resolution on the merits." *Id.* at 335. The *McEvoy* Court determined that the denial of that motion did not qualify as a collateral order, both because the order was not independent of the merits of the underlying claim and because a Rule 19 order denying joinder of a party is one that can be reviewed on appeal from a final judgment. *Id.*

In stark contrast here, Dr. Iovino's appeal is taken from rulings mandating that she comply with DoS' *Touhy* regulations and receive approval from an executive branch agency to obtain deposition testimony from any representatives of MSA. Neither MSA's motion seeking this protective order, nor the *Touhy* Orders themselves raise issues that would require this Court to determine issues that are key to a resolution of the merits of Dr. Iovino's whistleblower retaliation claims against MSA, *e.g.,* the nature and timing of Dr. Iovino's disclosures and MSA's employment actions. *See* 41 U.S.C. § 4712. The only issue raised by MSA's motion and determined by the *Touhy* Orders is the issue of whether Dr. Iovino must comply with DoS' *Touhy* regulations in order to depose any former or current representatives of MSA. JA 667, JA 723. This issue is collateral to the merits of the case, satisfying the second prong of the collateral order doctrine, because "it does not 'involve considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Cobra Nat. Res., LLC v.*

*Fed. Mine Safety & Health Review Comm'n*, 742 F.3d 82, 90 (4th Cir. 2014) (citations omitted).

### C. The *Touhy* Orders are Entirely Unreviewable on Appeal from a Final Judgment

Most critically, the issue of whether Dr. Iovino should be required to obtain agency approval through DoS' *Touhy* regulations in order to depose any representatives of MSA would completely evade appellate review absent the appeal at bar. MSA captions the third portion of its first argument as asserting that the "Orders are reviewable on appeal from a final judgment" but nowhere does MSA elaborate as to how any meaningful review of the *Touhy* Orders would be possible on appeal from a final judgment. Rather, the argument under this heading emphasizes again that it is "rare" that a pretrial discovery order will satisfy the stringent conditions for appealability under the collateral order doctrine and asserts that the issue raised in this appeal is "not sufficiently important" for collateral review. ECF 36 at 19-24. These arguments miss the mark of the third prong and, as previously discussed, fail to acknowledge the fact that Dr. Iovino cannot defy the *Touhy* Orders; her only avenue to take depositions of MSA's representatives under the framework established by the *Touhy* Orders is to seek *Touhy* approval, thereby irrevocably acquiescing to a separation of powers violation and waiving her objections thereto, making the *Touhy* issue unreviewable, or to forego taking any depositions of MSA's representatives. This is precisely the concern

encompassed by the third prong that the collateral order doctrine is intended to address. *MDK, Inc.*, 27 F.3d at 121 (citing *Firestone,* 449 U.S. at 376–77) ("Rather, the doctrine addresses the worry that an aggrieved party will be denied review entirely.").

Absent the appeal at bar, there is no avenue for meaningful appellate review of this issue, which is evident from the irreparable injury that will result if review of the *Touhy* orders is postponed until after a final judgment has been entered. "To be 'effectively unreviewable,' an order must protect an interest that would be 'essentially *destroyed* if its vindication must be postponed until trial is completed.'" *S.C. State Bd. of Dentistry v. F.T.C.*, 455 F.3d 436, 443 (4th Cir. 2006) (citation omitted). Such is the case here, because there will be no way to cure the prejudice of having to litigate the case under the wrong evidentiary rules after a final judgement is rendered, regardless of the outcome of the litigation. Conducting depositions of MSA's representatives under the *Touhy* framework will irremediably skew the factual record and the parties' strategic calculus. MSA's witnesses will tailor their testimony to match the cherry-picked evidence DoS chooses to clear for release. And both sides will make tactical decisions based on an incomplete evidentiary mosaic.

If Dr. Iovino somehow manages to prevail under the constrained *Touhy* procedures, the *Touhy* issue will be rendered academic. She will have already

obtained the discovery she seeks, albeit under protest and subject to the agency's improper control. She will have been forced to bear the substantial costs and burdens of proving her claim while wearing an evidentiary blindfold and will have no way to recapture the more fulsome discovery she was wrongly denied. Conversely, if she loses on the merits, the prejudicial impact of the *Touhy* Orders will be baked into the final judgment, likely without any separate right of appeal. No subsequent appellate remedy can undo that injury or restore the level playing field that Congress mandated when it authorized whistleblowers to litigate their claims unencumbered by agency interference.

Indeed, MSA's Motion itself reveals that the Department of Justice (DOJ), representing the Department of State (DoS), is effectively using MSA as its proxy to control the depositions of MSA's employees and managers. This control is being exerted under the guise of DoS's *Touhy* regulations, thereby infringing upon Dr. Iovino's rights under the Federal Rules of Civil Procedure. This effectively places the DoS in control of discovery. Few indicia of this DoS/DOJ control could be stronger than this fact: The DoS argued below that challenges to its *Touhy* regulations must be made in a separate APA action, asserting that the district court lacked subject matter jurisdiction to entertain such challenges within the current litigation. JA 574.

Although not a *Touhy* case, in *Hunton & Williams v. U.S. Department of*

*Justice*, 590 F.3d 272 (4th Cir. 2010), this court illuminated the dangers of government collaboration with private parties in litigation and its impact on evidence gathering. Both the majority and dissent in *Hunton & Williams* discussed the potential for abuse when the government aligns itself with private interests, which is directly relevant to the present case. The majority highlighted that when the government and a private party share a common interest and collaborate towards a shared goal, "the danger of 'self-advoca[cy] at the expense of others' subsides." *Hunton & Williams*, 590 F.3d at 287 (*quoting Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 12 (2001)). The court emphasized that "[w]ithin the scope of their shared interest," both parties advise each other "with an eye toward 'truth and its sense of what good judgment calls for.'" *Id.* at 287 (*quoting Klamath*, at 10, 121 S.Ct. 1060). The dissent viewed this collaboration as going beyond the axiom that "anyone who joins forces with the government in litigation will benefit if the partnership is successful." *Id.* at 287. The dissent warned of the danger that private parties could exploit the government's authority to advance their own interests, potentially at the expense of others. *Id.* at 291-292.

The concerns raised in *Hunton & Williams* are applicable here. By using MSA as a proxy, the DOJ is effectively extending its discovery control powers through a private party, which clearly undermine the integrity of the discovery process where

Dr. Iovino and her fellow whistleblowers directly impugn the DoS as being partners in retaliation with MSA. The government's collaboration with MSA has allow MSA to shield itself from the normal discovery obligations of a private party, disadvantaging Dr. Iovino and potentially compromising her ability to pursue her claims. This arrangement disrupts the balance of the adversarial system, as the government indirectly influences the litigation without being subject to the same obligations and scrutiny as a party. Far from being the kind of discovery matter rejected for *Cohen* collateral order review, this is a case in which the district court has allowed the DoS to act as a party and assert its interests through the party status of a private contractor. The *Touhy* Orders manifestly imperil substantial public interests and warrant immediate review under the collateral order doctrine.

## IV. 28 U.S.C. § 2403(A) AND FED. R. APP. P. 44 DO NOT APPLY OR JUSTIFY DISMISSAL

MSA's Motion asserts as an independent ground for dismissal Dr. Iovino's purported failure to give proper notice of a constitutional challenge to "an Act of Congress," as required by 28 U.S.C. § 2403(a) and Fed. R. App. P. 44. ECF 36 at 24-26. The assertion is frivolous. First, these provisions are inapplicable because Dr. Iovino is not challenging the constitutionality of 5 U.S.C. § 301 itself, but rather, MSA's standing to assert that DoS' *Touhy* regulations promulgated under this statute apply in this case. Section 2403 does not apply to regulatory challenges on their face or as applied. Second, even if regulatory challenges were

within the scope of Section 2403, the Attorney General has received actual notice of the challenge, and his Department of Justice has been a determined litigant in rejecting the constitutional challenges. Third, neither the statute or the rule provides for dismissal if a party fails to the give the notice.

Moreover, the very fact of MSA's arguments, as developed in its Motion under 28 U.S.C. § 2403(a) elevate the profile of the *Touhy* Orders in this case well beyond the kind of discovery dispute that appellate courts find inappropriate for review under the collateral order doctrine.

**A. <u>The Statute and Rule Have No Application to Regulatory Challenges</u>**

28 U.S.C. § 2403(a) provides that "[i]n any action, suit, or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General…" *Id.* Fed. R. App. P. 44 (a) provides that if a party "questions the constitutionality of an Act of Congress in a proceeding in which the United States or its agency, officer, or employee is not a party in an official capacity, the questioning party must give written notice to the circuit clerk." Neither cover regulations, and Dr. Iovino is not challenging the constitutionality of 5 U.S.C. § 301. MSA's bald assertion ironically contains a core of truth: "Iovino's appeal, in the guise of a challenge to a protective order, is

actually a separation of powers challenge *to DoS's interpretation of the federal housekeeping statute* under the APA." ECF 36 at 25 (emphasis added). The appeal is not in guise; it is as bold as can be stated both below and here. The separation of powers demands bold action in defense of that constitutional bulwark.

### B. Even if Applicable, the Department of Justice Has Actual Notice and Failure of Notice Does Not Warrant Dismissal

Assuming, arguendo, that § 2403(a) and Rule 44 apply to challenges of a private litigant's standing to assert federal regulations as a shield in civil litigation, the Department of Justice (DOJ) has actual notice of the constitutional issues raised. The DOJ, representing the State Department, actively participated in the district court proceedings. The DoS filed a "Statement of Interest" supporting MSA's motion for a protective order. JA 571- 574. Then the DOJ filed a reply in support of its earlier statement, elaborating on the arguments. JA 591-604. These filings demonstrate that DOJ has actual notice of the issues raised in this case and contradict, to a preposterous degree, the government's statement during the October 12, 2022 hearing regarding MSA's first motion for protective order, which led to the entry of the confidentiality order, that it "does not have a dog in this fight." JA 154. MSA's own motion concedes that Dr. Iovino attempted to engage the DOJ regarding a briefing schedule in the appellate court, noting that, "Iovino's motion to expedite cites a DOJ email in which the Government opposes expediting

the appeal in order to allow for the Solicitor General to determine whether intervention was warranted." ECF 36 at 25. The referenced email is from the Department of Justice, not the DoS solicitor. ECF 11-4 at 1. It was yet another effort by the DoS to control the litigation.

Actual notice is all that is required, and the DOJ participating in the litigation is enough. *Finch v. Mississippi State Med. Ass'n, Inc.,* 585 F.2d 765, 779 (5th Cir. 1978), *modified,* 594 F.2d 163 (5th Cir. 1979); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997). Moreover, absence of certification does not warrant dismissal. *Buchanan Cnty., Virginia v. Blankenship,* 545 F. Supp. 2d 553, 555, fn. 3 (W.D. Va. 2008) (*citing Merrill v. Town of Addison,* 763 F.2d 80, 83 (2d Cir.1985)). A "failure to comply does not deprive the district court or the court of appeals of jurisdiction." *Bottineau Farmers Elevator v. Woodward-Clyde Consultants*, 963 F.2d 1064, 1075, fn. 10 (8th Cir. 1992).

## V. THE IRONY OF MSA'S § 2403(A) ARGUMENT IS THAT IT FURTHER SUPPORTS THIS APPEAL'S INCLUSION IN THE "SELECTIVE MEMBERSHIP" OF *COHEN* EXCEPTIONAL CASES.

MSA's Motion insists that this appeal is not a candidate for inclusion in "the 'small class' of collaterally appealable orders" that must remain "narrow and selective in its membership," citing *Will v. Hallock*, 546 U.S. at 350. ECF 36 at 10. Dr. Iovino responds that few cases could match the qualifications of this case. First, this appeal raises important constitutional challenges in the context of civil

discovery. ECF 43 at 50-56. Indeed, the Motion notes that "the District Court, upon Iovino's request, issued a stay pending appeal." ECF 36 at 9. Judge Cullen specifically found that this stay was warranted for "good cause shown." JA 753. Second, in complaining that this appeal was expedited too fast to let the DOJ weigh in on the briefing schedule, MSA inadvertently supports Dr. Iovino's argument that MSA lacks standing to assert the applicability of DoS' *Touhy* regulations, much less defend the constitutionality of their application to make a federal agency an intermediary in Dr. Iovino's right to take depositions in accordance with the Federal Rules of Civil Procedure in an Article III court.

## VI. CONCLUSION

For the foregoing reasons, Dr. Iovino respectfully requests that the Court deny MSA's Motion to Dismiss, enter a new briefing schedule with appropriate deadlines for the filing of MSA's responsive brief and any reply brief by Dr. Iovino, and re-calendar this appeal for oral argument as soon as practicable.

Respectfully Submitted,

*/s/ Elisabeth R. Connell*

GOVERNMENT ACCOUNTABILITY PROJECT
John A. Kolar
Elisabeth R. Connell
1612 K St., N.W., Suite 808
Washington, DC 20006
Jackk@whistleblower.org
ElisabethC@whistleblower.org

Thad M. Guyer
T.M. Guyer and Ayers & Friends, PC
116 Mistletoe Street
Medford, OR 97501
thad@guyerayers.com
(202) 417-3910

*Attorneys for Plaintiff-Appellant*

**CERTIFICATE OF COMPLIANCE**

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,186 words excluding exempted materials.
2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Date: October 7, 2024 *<u>/s/ Elisabeth R. Connell</u>*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 7, 2024, service of the foregoing was made through the Court's CM/ECF system.

*<u>/s/ Elisabeth R. Connell</u>*